In the Matter of the Estate of ANNA DAVIS, Deceased.

Surrogate's Court, New York County, March 23, 1933.

*Gustavus Leight,* for the petitioner.

*Irving Lax* and *Michael Rechler,* for the administratrix.

DELEHANTY, S. The question here involved is whether the instrument signed by the deceased upon her admission to the home maintained by petitioner constitutes an assignment and transfer of funds not delivered to the petitioner at the time of admission but remaining on deposit in the name of deceased in banks in New York and in Massachusetts. The instrument is a printed form with spaces left to be filled in with date, name of inmate, property deposited, etc.

By clause second there is recited in typewriting a specific deposit of $500 in money " and also deeds Linden, N. J." All the rest of the instrument is as originally printed with the blanks unfilled. By clause third there is provision for the assignment to petitioner of insurance policies, if any.

Clause fourth provides:

" *Fourth.* In consideration of the care and support received by the Guest from the Corporation, it is understood and agreed that in the event of death of said Guest, all monies in h possession at that time, or on deposit in any bank or banks, or to h credit, shall remain the property of the Corporation."

Clause fifth reserves the right to discharge the deceased from the home and further provides: " any money contributed to the Corporation by said Guest and/or Children, shall remain the property of the Corporation, free from any claim of any kind, nature or description."

Petitioner asserts that clause fourth, quoted above, entitles it to claim ownership of all moneys of deceased wherever possessed or deposited by her. It is to be noted that the clause is not limited to death while deceased was a resident of the home. It is to be noted that the reference to the rights of petitioner in moneys not delivered on admission is to the effect that such money " shall *remain* " the property of petitioner.

Clause fourth does not purport to transfer to petitioner *at the time of admission* all moneys then in the ownership of decedent. It does not purport to prevent the gift *inter vivos* to others of the money in the control of deceased. As the clause is phrased, it might well be understood by the subscriber to refer only to money actually transferred into the custody of petitioner. The phrase " shall *remain* " is applicable only to money in the custody of

petitioner. Its pertinence is not clear if it be said to describe money not in possession of petitioner.

The instrument was drawn by petitioner and in the circumstances attending the execution of such an instrument the terms are to be strictly construed against petitioner. This rule of interpretation is stated in *Gillet* v. *Bank of America* (160 N. Y. 549, at p. 554 *et seq.*). The court there said: "Such unusual and almost unlimited power over the property of another is not to be implied or inferred from doubtful or uncertain language.

"If there is any uncertainty or ambiguity as to the meaning of the agreement, it should be resolved in favor of the plaintiff, as it was the defendant who prepared this contract. If there is any doubt, as to the meaning of the terms employed, the defendant is responsible for it as the language is wholly its own (p. 554). * * *

"The reason of the rule that the language of an instrument is to be construed against the person who proposes it rather than against the person who is invited to accept it, is that men are supposed to take care of themselves, and that he who chooses the words by which a right is given, ought to be held to the strict interpretation of them, rather than he who only accepts them. * * * (p. 555).

"In the construction of written contracts it is the duty of the court, as near as may be, to place itself in the situation of the parties, and from a consideration of the surrounding circumstances, the occasion and apparent object of the parties, to determine the meaning and intent of the language employed.. Indeed, the great object, and practically the only foundation of rules for the construction of contracts is to arrive at the intention of the parties. This is a most conspicuous and far-reaching rule, and involves the nature of the instrument, the condition of the parties and the objects which they had in view (p. 555). * * *

"Where there is uncertainty or doubt as to the meaning of words or phrases used in a contract, in seeking for the intent of the parties as evidenced by the words used, the fact that a construction contended for would make the contract unreasonable and place one of the parties at the mercy of the other, may properly be taken into consideration" (p. 557).

The further rule applies that the typewritten part of a printed instrument is to govern as against doubtful, uncertain or repugnant printed provisions. (*Heyn* v. *New York Life Ins. Co.*, 192 N. Y. 1.)

The interpretation of the contract sought by petitioner would result in the transfer to it of over $5,000 in addition to the deposit originally made. Such result was not in the contemplation of petitioner, since it knew nothing of the additional funds, and the

court does not believe that deceased intended any transfer except that expressed by the typewritten matter.

The instrument is insufficient to convey to petitioner any interest in the moneys of deceased not in the possession of petitioner at the time of her death.

The application to compel the administratrix to turn over the property to the alleged assignee is, therefore, denied.

Submit order on notice accordingly.